*LESSEE OF CADWALLADER WALLACE *v.* RICHARD SEYMOUR [**156** AND H. RENNICK.

By a sale of land for taxes in the Virginia military district, surveyed but not patented, the whole interest passes to the purchaser, and no right remains in the original holder. But, if such holder, to defeat the sale for taxes, is permitted to withdraw the survey and make a new one, upon which he obtains a patent, such patent is not void. The patentee holds the title subject to the rights that may have been acquired by the purchaser for taxes.

RESERVED in the county of Pickaway. This case was submitted to a jury at the last term of the court, in the county of Pickaway, and a verdict returned in favor of the plaintiff.

The lands in controversy are situated within the Virginia military district.

On the trial the plaintiff gave in evidence a patent from the United States, covering the land in controversy, and rested his case.

The defendants then offered to prove that the survey upon which the plaintiff's patent was based, was founded upon an entry in the name of Benjamin Holmes; that this entry had been previously surveyed, and the survey recorded in the name of Benjamin Holmes; that while the said last-mentioned survey subsisted, the survey and lands covered thereby had been legally sold for taxes to the defendant, Seymour, and a deed duly executed therefor; that after the sale and conveyance as aforesaid to Seymour, the heirs or representatives of B. Holmes caused "*error*" to be written on the recorded plat of the said previous survey, and withdrew the same, and caused a new survey to be made in their own names and recorded, which is the survey upon which the plaintiff's patent is based; and that the latter survey excludes two hundred acres of land included in the first survey.

This evidence was rejected by the court, and a verdict was returned for the plaintiff as before stated. Whereupon the defendants moved for a new trial on the ground that the court had im properly rejected the evidence by them offered.

LEONARD, DOUGLASS, and OLDS, in favor of the motion, insisted:

1. That since the act of Congress of March 2, 1807, a survey is

Wallace *v.* Seymour and Rennick.

a sufficient defense in the action of ejectment, where the defendant is in possession under such survey. It is a good defense even against a patent granted on an entry made after the survey, and to support this position, they cited the case of Lessee of Anderson *v.* Clarke and Ellison, 1 Pet. 628.

2. That the patent to Wallace is void, not being issued in conformity to the act of Congress. The act of Congress, *Swan's Land Laws, 132, requires the production of the warrant, etc., and the survey executed agreeably to the laws of Virginia. This prerequisite was not complied with in the present case. The survey upon which the patent is based, is in contravention of the laws of that state, being made without any authority. By the sale for taxes, all the rights of Holmes, or his heirs, were vested in the purchaser. After this sale, there was no authority left in them to withdraw the survey, or to affect a new one.

3. The patent was fraudulently obtained for the purpose of defrauding the purchaser for taxes of his interest in the land.

On all these grounds they insisted that the evidence offered by the defendant should have been received, and inasmuch as it was not, therefore a new trial ought to be granted.

G. SWAN, contra:

Entries and surveys are only equitable estates, and as such can not be relied upon to support an ejectment or to defend in such action. 2 Wash. C. C. 33: 1 Marsh. 197, 440; 2 Bibb, 150; 4 Bibb, 554; 2 Ohio, 263; Tel Adams Eject. 32, note, 267; 1 Ohio, 313; Lit. Sel. Cas. 513; 2 Bibb, 129, 416; 3 Wheat. 212.

It may be affirmed, without fear of contradiction, that an ejectment has never been sustained upon an entry or survey; nor has it been attempted to subject lands thus situated to sale on judgment at law.

If the sale for taxes conferred any interest upon the purchaser, it conferred no greater interest than had previously been vested in Holmes, and this was a mere equitable interest, which can not at law avail against the legal title.

It is to be presumed that the first survey was properly withdrawn until the contrary is proven, and as the survey upon which the patent is based, was executed upon an entry made previous to 1807, the case is not within the proviso to the act of Congress of that year.

Wallace *v.* Seymour and Rennick.

Judge HITCHCOCK delivered the opinion of the court:

In the consideration of this motion, a variety of questions are presented of more than ordinary difficulty, in consequence of the nature of the titles in the Virginia military district, and the peculiar structure of our laws regulating the sales of land for taxes. By the introduction of his patent, the plaintiff *established [158 an apparent right to recover. And this right could only be defeated by showing a superior legal title, or by showing that the patent itself was inoperative to convey title. No attempt was made to show an older patent than that under which the plaintiff claims; of course, the defense relied upon does not depend upon a grant derived directly from the government of the United States, but upon the fact that the title of the plaintiff is invalid; in other words, that his patent is void.

It is claimed that this patent is void on the ground that the survey upon which it is based was made in contravention of the law of Congress of March 2, 1807. To determine this question, it becomes necessary to consider the effect of the sale for taxes, to prove which, the evidence rejected was intended. This sale we are bound to presume was in all respects in conformity to the law, and that the auditor's deed actually conveyed to the purchaser all the interest in the land which, under the circumstances, could by law be conveyed. The laws in force at the time provided that such deed should " convey to the purchaser all the right, title, and interest of the former proprietor in and to the land so sold." Before this sale for taxes, the " proprietor" of this survey was Benjamin Holmes, and at the time of sale, it was vested in him or his heirs—all the interest of Holmes and his heirs was, under the law then in force, vested in the purchaser. But as no grant had been made by the government, this was a mere equitable interest, as has been decided at the present term in the case of Lessee of Dresback and others *v.* McArthur. As it was a mere equitable interest, it could not at law avail the defendants against him having the legal title; and this disposes of the proposition of the defendants, that upon an entry and survey, ejectment may be sustained, or that the proprietor of such entry and survey may, upon the strength of his title, defend in ejectment.

At the time of this sale the legal title being in the government, had that title afterward been granted to Holmes, his heirs or assigns, upon the same survey, the case would have been similar

in principle to that of Stuart's Lessee v. Parish, 6 Ohio, 477, in which the court held that where lands had been sold for taxes before a patent issued, the legal title of the patentee would not be thereby affected. But although the effect of the auditor's deed is 159] only to convey an equity *where the former proprietor had no greater estate, yet this is only between the owner of the legal estate and the purchaser. The tax deed purports to convey a legal estate. It is made by authority of the state, and as to all the world, except him who has the legal interest, would convey a legal title. Further, should the former proprietor afterward obtain his patent, although vested with the legal title, he must hold it in trust for the purchaser at tax sales. There is a difference in sales for taxes and upon execution. Upon the latter, mere equities can not be sold, while express provision is made by statute for selling *any interest*, which a man may have in lands, for taxes.

A sale for taxes, vesting in the purchaser all the interest, whether legal or equitable, of the former proprietor, it follows, in the present case, where the hypothesis is that the sale was legal, that the interest of Holmes and his heirs was vested in the defendant, Seymour. And although, according to the law as we understand it, the proprietor of an entry and survey may withdraw the same and locate it on other unappropriated lands, yet when his ownership ceases, this power ceases. After the purchase of Seymour, neither Holmes, nor any person claiming under him, had any right to withdraw this survey because they had no interest therein, and Seymour would be protected against any subsequent locator in virtue of the act of 1807.

This act extends the time for making locations within the district for the term of three years, " Provided that no locations as aforesaid within the above-mentioned tract shall, after the passing of this act, be made on tracts of land for which patents had been previously issued, or which had been previously surveyed, and any which may, nevertheless, be obtained for land located contrary to the provisions of this section, shall be considered as null and void." Swan L. L. 134.

The object of this provision is to prevent new locations upon previous surveys—not to prevent the survey of previous locations. In the case before the court, the original location was made long before 1807. It was also surveyed before that date. An attempt has been made to withdraw this survey, and resurvey a part of

Wallace *v.* Seymour and Rennick.

the same land on the original entry or location. And upon this resurvey the patent has emanated. *The case is not within [160 the letter of the proviso to the act, and we think it is not within its meaning.

It is objected that the withdrawal was without authority, and therefore that the survey upon which the patent is based is void, and if so the patent is also void. Upon this part of the case there certainly is much difficulty. As before stated, we consider that Seymour, after the purchase for taxes, was the owner of the survey as completely as Holmes was before, and of course the subsequent withdrawal was without authority. Still, we incline to the opinion that the patent is not void, as all the land granted by it is within the original survey, although it does not purport to be based on that survey. The legal title is gone from the government, and vested in Woldmer. Whether he holds it in trust for the defendants must depend upon such facts as may be disclosed in a proper case.

It has been further urged in support of the motion that, as the patent covers only six hundred out of the eight hundred acres originally surveyed, if this patent is held to be valid the defendants will be deprived of the two hundred acres not patented. It is not so. The survey as to the two hundred acres is still a subsisting survey, because, although an attempt has been made to withdraw, it is a void act, having been attempted by those who had no interest.

Another objection to this patent is, that it was obtained for the purpose of defrauding the purchaser for taxes. If the patent had been issued on the original survey, it would have been a valid instrument. Does the circumstance that the survey was changed alter the case? We think not. The object of this withdrawal was undoubtedly to evade the payment of the taxes, or rather to defeat the title of the purchaser for taxes, a measure which can never be sanctioned by this court. So far as an attempt to defeat this title can be considered fraudulent, a fraud was undoubtedly intended. But, notwithstanding this change of the survey, the patentee must hold the land subject to any claim which the defendants may have in consequence of their purchase at tax sale, and this claim will be sustained in the proper court upon a case made entitling them to relief.

Upon the whole, we are of opinion that the evidence offered

would not have availed the defendants in their defense, and it was therefore properly rejected.

The motion for a new trial is overruled.